UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEVIN BEAUCHAMP, on behalf of himself and all others similarly situated,

        Plaintiffs,

v.

**CLASS ACTION COMPLAINT AND**
**DEMAND FOR JURY TRIAL**

Canal Sounds and Light, Inc.,

        Defendant.

_____/

## Declaration of Robert D. Moody

I, Robert D. Moody, declare that I have read the foregoing instrument and the facts and information stated in it are true and correct to the best of my knowledge. I am personally acquainted with the facts stated herein.

1. I am the President, CEO, and Founder of Forensic Data Services, Inc. (d/b/a FDS Global) (hereafter referred to as FDS) which is based in Broward County, Florida.

2. My company was retained by the Law Firm of Mars Khaimov Law, PLLC, counsel for the benefit of its client, which includes Kevin Beauchamp Anderson.

3. The Plaintiff has established that he is visually impaired and asserts his rights under the Americans with Disability Act (ADA).

4. I have been retained to provide consulting services to include auditing of websites which include compliance, usability, and accessibility standards (WCAG 2.0) as well as general functionality analysis for disabled users.

5. My duties with FDS include being the principal investigator and testifying expert.

6. I am certified in the areas of Information Systems Auditing, Information Security, and Computer Forensics. Additionally, I have received training relating to my work in this matter and provide my CV to fully describe my education, Certification, Training, and Testifying background. My CV is attached as **Exhibit 1**.

7. Specific to websites and their functionality, I have experience in the design, layout, coding, auditing, and testing of functionality, security, and operability of websites and their content.

8. Specific to ADA Compliance, I have audited and/or directed, and directly supervised, more than 5000 websites to date. Included in this work are sites for all major industries operating on many different platforms.

9. My work has identified websites that were both WCAG-compliant as well as non-compliant with WCAG.

10. For the websites that were found to be non-compliant, defendants have often relied on my work to bolster their remediation efforts and effectively correct the issues they were facing.

11. In the present matter, FDS with me as the principal investigator, was retained by Plaintiff's counsel on behalf of Plaintiff, a visually impaired user of the internet, to determine whether the website of Canal Sound and Light, https://www.canalsoundlight.com had issues that could not be overcome and as such these issues acted as barriers to their use and enjoyment of the website.

12. My audit of this website included three distinct components. These components are:

    a. Evaluation of claims made by Plaintiff.

    b. Independent review of the website as it relates to compliance with WCAG 2.0/2.1.

    c. Independent, automated evaluation of the website's code thus identifying errors or issues that would serve as barriers for disabled users.

13. The Plaintiff identified several specific issues that served as barriers to their use and enjoyment of the site. These issues included:

    a. A "Skip to content" link was not implemented. The Plaintiff was not provided with the mechanism to bypass repeated blocks of content.

    b. Heading hierarchy was not properly defined, and there were missing heading levels. As a result, quick navigation through headings on the website did not help the Plaintiff effectively find the content and understand the logical structure of the home page.

    c. Heading roles were applied to the non-informative elements of content. As a result, the Plaintiff could not scan the home page quickly for the content of interest and was forced to read it in detail.

    d. The Plaintiff was not aware of the search suggestions after the key term was entered into the Search bar. The status update about search suggestions was not provided even though the search suggestions were displayed.

    e. Sub-menu elements with drop-down menus were inaccessible via keyboard. The Plaintiff could not interact with sub-menus using "tab" or "arrow" keys. The website had device-specific functionality, like mouse-dependency, making it inaccessible to legally blind users.

    f. The Navigation sub-menus with drop-down lists did not announce their state - "collapsed" or "expanded". The Plaintiff could not determine in which part of the sub-menu the keyboard focus was located or if the links were skipped.

    g. Interactive elements from the website could not be focused with the Tab key. The website did not provide helpful instructions on how to access the interactive element using arrow keys. The Plaintiff did not know about the interactive element from the page.

    h. The Plaintiff tried to follow the links from the website and received no prior warning that the links opened new windows. As a result, the Plaintiff unsuccessfully tried to use the "Back" function of the browser to go to the previous page and became disoriented.

i. Images on the website did not have alternative text. The Plaintiff did not receive any description of the non-text content.

j. The Category page was reloaded after the Plaintiff tried to filter items on it and the keyboard focus moved to the top of the page. As a result, the Plaintiff was confused by the change of context.

k. The Plaintiff was forced to repeatedly tab through elements with the same destination: the link text of products conveyed similar information and led to the same destinations as interactive images above the links.

l. The Plaintiff could not access the element on the website because it was improperly constructed: the "a" tag was used without the "href" tag. The Plaintiff did not receive full access to all of the elements on the website and did not know what element was missing.

m. When opening a dialog, focus order did not move from trigger button to dialog items. The Plaintiff was confused while navigation, encountering information in an inconsistent order with the meaning of the content that could not be operated from the keyboard.

n. An Icon was used as link without appropriate alternative text. The Plaintiff was not informed about the purpose of the graphic icon.

o. The Plaintiff was unable to determine if the form fields were mandatory ("Required"). The lack of detailed instructions while filling in the form, prevented The Plaintiff from successfully submission of personal information.

14. The issues identified by the Plaintiff were verified to exist and serve as barriers for disabled visitors.

15. In FDS' second phase of its audit, I independently evaluated the website on March 5, 2024.

16. In my evaluation of the https://www.canalsoundlight.com website, I established that issues with the website do exist and these issues would serve as barriers to individuals with low to no vision.

17. My evaluation of the website identified the following:

   a. Certain elements do not meet minimum color contrast ratio thresholds. This creates a barrier for users to distinguish text and other elements on the page.

   b. Certain images did not contain text that properly described the object it represented or it could not be properly interpreted by assistive technologies such as screen readers.

   c. Certain links do not contain text that properly described the object it represented, or it could not be properly interpreted by assistive technologies such as screen readers.

   d. The heading hierarchy was not properly defined, and there were missing heading levels. As a result, quick navigation through headings on the website did not help the Plaintiff effectively find the content and understand the logical structure of the home page.

   e. Certain page content was not contained by landmarks. Such a barrier would cause the website to be more difficult to navigate with a screen reader.

      f. Certain links were not distinguishable without relying on color. Such a barrier can prevent users from being able to discern content on the page.

18. Lastly, FDS' third phase of its audit is the application of automated software that evaluates the website's code.

19. To accomplish this last phase of testing, FDS employs software developed by Deque.com. This software is considered a "best in breed" program and employs the latest Artificial Intelligence (AI) to reduce or eliminate both false positives and false negatives.

20. The automated testing of https://www.canalsoundlight.com identified 49 issues that would either serve as barriers or prevent disabled users from accessing and enjoying the website.

21. These issues break down as follows:

| Critical | Serious | Moderate | Minor | Color Contrast | Other |
|---|---|---|---|---|---|
| 1 | 44 | 4 | 0 | 31 | 0 |

22. To better understand the categories provided above, the following descriptions are provided:

    a. **Critical** - This issue results in blocked content for people with disabilities, and will partially prevent them from accessing fundamental features or content. This type of issue puts your organization at risk.

    b. **Serious** - This issue results in serious barriers for people with disabilities, and will partially prevent them from accessing fundamental features or content. People relying on assistive technologies will experience significant frustration as a result.

    c. **Moderate** - This issue results in some barriers for people with disabilities but will prevent them from accessing fundamental features or content.

    d. **Color Contrast** - This issue is the result of an organization not ensuring that a proper ratio between the foreground and background of text and pictures is maintained. The proper ratio of 4.5:1 for normal text and 3:1 for large text must be maintained. Failure to meet this standard creates barriers for disabled users, especially visually impaired users.

    e. **Other –** This issue identifies issues that are based on what has been determined as a best practice and when taken into account along with items a. through d., a minor issue could be elevated to a critical or serious barrier.

23. To conclude, taking into account the issues presented by the Plaintiff as well as the independent visual review of the website and the automated testing, It is my expert opinion and with a high degree of scientific certainty that the website https://www.canalsoundlight.com has defects that can and will continue to create problems for visually disabled persons, such as the Plaintiff, and that these defects act as a barrier to the effective use and enjoyment of the site for persons with low to no vision.

24. Accordingly, I reserve the right to update, alter, change, delete, and supplement or in the alternative file a supplement to this declaration if provided with additional relevant material.

**DECLARANT FURTHER SAYETH NOT.**

Under penalty of perjury, I hereby affirm that the foregoing statements are true and correct.

*Robert D Moody*
_____
**Robert D. Moody**
Rmoody@fds.global

Date: **5 March 2024**